UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA ALVAREZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FCA US, LLC, <br><br> Defendant. | Case No. 24-cv-08782-PCP <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Re: Dkt. Nos. 22, 23 |

Plaintiffs Marina Alvarez and Ismael Alvarez Hernandez allege that defendant FCA US, LLC (FCA) breached express and implied warranties on, and fraudulently induced them into buying, their 2019 Jeep Cherokee, which had defects in its transmission. FCA moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the following reasons, FCA's motion is denied.

## BACKGROUND

Marina Alvarez and Ismael Alvarez Hernandez are California residents who live in Santa Clara County.[1] FCA US, LLC, is a Delaware limited liability corporation that does business in California. Around June 18, 2018, plaintiffs entered into a warranty contract with FCA for a 2019 Jeep Cherokee. They allege that "[d]efects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to, transmission defects, engine defects, electrical defects; among other defects and non-conformities." Ultimately, they claim that the defects make driving dangerous due to risks of dangerous merging, a "sudden loss of power," or "fail[ing] without warning, while … moving at highway speeds."

---

[1] The Court assumes the truth of the allegations in plaintiffs' complaint for the purposes of defendant's Rule 12(c) motion.

United States District Court
Northern District of California

Plaintiffs sued FCA on August 30, 2024, in Santa Clara Superior Court. Plaintiffs allege that FCA committed four violations of the Song-Beverly Act and fraud by inducement/concealment. Plaintiffs demand a jury trial and seek damages, restitution, civil penalties, prejudgment interest, fees and costs, and other appropriate relief. FCA removed plaintiffs' action to this Court on December 5, 2024. FCA now moves for judgment on the pleadings.

## LEGAL STANDARD

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The Court must therefore view the facts and inferences drawn from the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## DISCUSSION

FCA argues that plaintiffs' claims are untimely and that plaintiffs' fraud claim fails because they have not pleaded it with sufficient specificity, FCA did not have a duty to disclose, and the claim is barred by the economic loss doctrine.[2] FCA's arguments all fail.

### I.    Timeliness

Because a motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to motions to dismiss for failure to state a claim under Rule 12(b)(6), *Dworkin*, 867 F.2d at 1192, the same analysis applies, *see McKinney-Drobnis v. Massage Envy Franchising, LLC*, 2017 WL 1246933 (N.D. Cal. Apr. 5, 2017). Under Rule 12(b)(6), timeliness under the statute of limitations "is generally an affirmative defense rather than an element of the plaintiff's claim."

---

[2] FCA requests judicial notice of the existence of five other complaints filed by plaintiffs' counsel in California state courts. Dkt. No. 23, at 1–2. Because FCA requests "judicial notice only of the existence of the complaints, not their truth," FCA's request is granted. *See Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

United States District Court
Northern District of California

*A.B. ex rel. Turner v. Google LLC*, 737 F. Supp. 3d 869, 877 (N.D. Cal. 2024). Affirmative defenses do not provide a basis for dismissal unless plaintiffs have pleaded or admitted "all the ingredients of an impenetrable defense," *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018), meaning that the plaintiffs' pleaded facts demonstrate no "potential factual dispute that could affect whether the defense applies," *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024). A defense of untimeliness thus will be granted "only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred." *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).

The first four of plaintiffs' five causes of action, alleging violations of California Civil Code Sections 1793.2(a)(3), (b), and (d), and 1791.1, concern FCA's express and implied warranties as to plaintiffs' Jeep Cherokee. FCA argues that judgment on the pleadings is proper because the statute of limitations is five years for breaches of express warranties and one year for breaches of the implied warranty of merchantability. Plaintiffs bought their vehicle in June 2018 "but waited until August 2024, over a year after the limitations period ended, to file this lawsuit."

FCA cites *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1306 (2009), in support of its argument that a statute of limitations for warranty claims, "express and implied, generally begins to run at the time of sale and delivery, *not* when a defect is discovered." But in *Mexia*, the California Court of Appeal explained that a breach of warranty cause of action under the Song-Beverly Act "accrues when the breach occurs" and that a "breach … occurs when tender of delivery is made, except that where a warrant explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance[,] the cause of action accrues when the breach is or should have been discovered." *Id.* at 1306. The Ninth Circuit has concluded that the California Court of Appeal's rule in *Mexia*, "that § 1791.1 'does not create a deadline for discovering latent defects or for giving notice to the seller[,]' … must be followed" as to the implied warranty of merchantability. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222–23

(9th Cir. 2015).

Here, plaintiffs' warranty "explicitly extend[ed] to future performance of goods," *Mexia*, 174 Cal. App. 4th at 1306, and plaintiffs allege that "[d]efects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to, transmission defects, engine defects, electrical defects; among other defects and non-conformities." While plaintiffs have not alleged voluminous facts, plaintiffs have not pleaded "all the ingredients of an impenetrable defense." *Durnford*, 907 F.3d at 604 n.8.

Plaintiffs bought their 2019 Jeep Cherokee "[o]n or about June 18, 2018." That 2019 Jeep Cherokee allegedly had a "defective 9-speed transmission" at the time of its purchase. Plaintiffs say that they "did not discover [FCA's] wrongful conduct alleged herein until shortly before the filing of the complaint [in 2024], as the[ir] Vehicle continued to exhibit symptoms of defects following Defendant FCA's unsuccessful attempts to repair them." Plaintiffs also point out that their express warranty causes of action allege that FCA "fail[ed] to affirmatively replace or repurchase the Subject Vehicle after it failed to repair the vehicle to conform to warranty after a reasonable number of attempts." Plaintiffs allege that FCA "(and its dealership) undertook to perform various repair measures" and "represented to Plaintiffs that the Subject Vehicle was fixable and attempted to fix it." Thus, plaintiffs' discovery of their vehicle's latent defect occurred sometime *after* their purchase of the Jeep in June 2018. If plaintiffs discovered the defect or defects between August 2019 and August 2024—as their allegations establish is possible—then their breach-of-express-warranty claims would be timely. If plaintiffs discovered the defects between August 2023 and August 2024, then the implied warranty claims would also be timely. On the face of their complaint, plaintiffs could have discovered the defect within either period. As a result, plaintiffs have not affirmatively pleaded themselves out of their warranty claims on timeliness grounds.

As to plaintiffs' claim of fraudulent inducement/concealment, California Code of Civil Procedure Section 338 establishes a three-year statute of limitations. Subsection (d) says that "the cause of action … is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." FCA argues that, because plaintiffs bought their car on

United States District Court
Northern District of California

4

United States District Court
Northern District of California

June 18, 2018, the statute of limitations on their fraud claims "expired three years later on June 18, 2021," rendering their August 30, 2024, filing date untimely.

But as discussed above, plaintiffs plead that they did not discover the defect in their vehicle until "shortly prior to the filing of this Complaint." Plaintiffs' allegations do not preclude the possibility that they discovered their vehicle's defect the day, week, or month before filing their suit, which would make their action timely. Therefore, FCA's motion for judgment on the pleadings on untimeliness grounds is denied.

## II.    Fraudulent Inducement/Concealment

Fraudulent inducement/concealment under California law requires "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would have acted differently if the concealed or suppressed fact was known; and (5) plaintiff sustained damage as a result of the concealment or suppression of the material fact." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40 (2024).

FCA argues that plaintiffs have not alleged their fraud claim with sufficient particularity, that FCA did not owe plaintiffs a duty of disclosure, and that the economic loss doctrine bars plaintiffs' fraud claim.

### A.  Particularity

Under Rule 9(b), a plaintiff alleging fraud must plead "the who, what, when, where, and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Here, plaintiffs allege that they entered into a California warranty contract with FCA, the who, on or around June 18, 2018, the when. Plaintiffs allege that FCA did not disclose to plaintiffs that their vehicle had defects that can cause driving problems, which is the what and the how.

FCA argues that plaintiffs have inadequately alleged specificity in four ways. First, FCA says that plaintiffs alleging fraud against a corporation must identify the specific names of the human persons they interacted with, what their authority was, what they said, and when. But FCA cannot cite authority binding upon this Court, aside from nonbinding or inapplicable California Courts of Appeal decisions, to support its argument that alleging a corporation and its

United States District Court
Northern District of California

representatives committed fraud is insufficiently particularized. Moreover, plaintiffs allege fraudulent *concealment*, which means that plaintiffs claim that defendants failed to say something, as opposed to someone making an affirmative misrepresentation. Therefore, plaintiffs have adequately alleged that FCA and its representatives, legal persons, committed fraud as to sufficiently plead the "who" for plaintiffs' fraud allegations.

Second, FCA argues that plaintiffs have defined the "what" of their vehicle's defect too vaguely, calling it simply a "transmission defect." But plaintiffs allege that their 2019 Jeep Cherokee's "9-speed transmission [is] defective" and resulted in specific problems such as "hesitation on acceleration, loss of power, hard and/or harsh shifts, and/or jerking." Plaintiffs have alleged the "what" of fraud with enough specificity.

Third, FCA argues that plaintiffs "fail to identify *any* representations FCA US made to them about the Subject Vehicle, when they saw or heard those representations, or who made them." But in a fraudulent concealment claim such as plaintiffs', plaintiffs' legal theory is that FCA *should have made* representations to them and did not.

Fourth, FCA argues that plaintiffs inadequately plead FCA's knowledge because they plead "on information and belief." In support, FCA cites nonbinding California state cases on the heightened pleading standards for fraud that apply in California courts. In response, plaintiffs cite a California Court of Appeal decision, *Dhital v. Nissan North America*, 84 Cal. App. 5th 828, 844 (2022), which held that the plaintiffs there sufficiently pleaded fraud by alleging specific problems, the existence of premarket testing, and consumer complaints.

While neither decision is particularly helpful in considering what Federal Rule 9(b) requires, the holding in *Dhital* more closely tracks the application of that rule here. Plaintiffs identify specific problems with their transmission and allege that "pre-production testing data, early consumer complaints about the Transmission Defect made directly to Defendant FCA and its network of dealers, testing conducted by Defendant FCA in response to these complaints, as well as warranty repair and part replacements data received by Defendant FCA from Defendant FCA's network of dealers, amongst other sources of internal information." These facts make plausible the inference that FCA knew of the risk of the alleged defect, and satisfy Rule 9(b), which expressly

permits a defendant's knowledge to be pleaded generally. *See* Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Therefore, plaintiffs have alleged fraud with sufficient particularity.

**B. Duty to Disclose**

FCA argues that it did not owe plaintiffs a duty to disclose because it did not directly transact with plaintiffs, FCA did not have exclusive knowledge of a defect, FCA's data collection and warranty do not create such a duty, and plaintiffs bought their 2019 Jeep Cherokee from a third-party dealer. But none of these are *necessary* conditions for the existence of a duty to disclose. Instead, they are merely sufficient, alternate ways by which plaintiffs can establish such a duty.

Tellingly, FCA cites no California or federal case suggesting that vehicle manufacturers that sell through dealerships can withhold material information from consumers simply because they have no disclosure duty. To the contrary, numerous state and federal decisions assume that a manufacturer that sells its vehicles through independent dealers has a duty to disclose material information. *See OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 851 (2007) ("Under California law, a vendor has a duty to disclose material facts not only to immediate purchasers, but also to *subsequent purchasers* when the vendor has reason to expect that the item will be resold."); *see also, e.g.*, *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 960–61 (N.D. Cal. 2018); *Dhital*, 84 Cal. App. 5th at 844; *Lessin v. Ford Motor Co.*, 756 F. Supp. 3d 885, 944 (S.D. Cal. 2024); *Paperno v. Whirlpool Corp.*, 2024 WL 1091192, at *3 (N.D. Cal. Mar. 13, 2024); *In re Toyota Motor Corp. Unintended Acceleration Mkting., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1191–93 (C.D. Cal. 2010).

Given the frequency with which vehicle manufacturers have faced fraudulent concealment claims under California law and the absence of any California authorities rejecting the viability of such claims, the Court is reluctant to conclude that California law imposes no duty of disclosure on manufacturers such as FCA. To the extent California courts have addressed the issue, the most

United States District Court
Northern District of California

on-point authority is *Dhital*.[3] In that case, the California Court of Appeal explained that a "duty of disclosure … *may* arise from a relationship between the parties, such as a buyer-seller relationship" between consumers and car dealerships, 84 Cal. App. 5th at 843 (emphasis added), but concluded at the pleadings stage that the plaintiff could also assert a claim premised on the vehicle manufacturer's duty to disclose. The court held that plaintiffs had adequately pleaded that Nissan owed plaintiffs a duty to disclose because plaintiffs "alleged that they bought the car from a Nissan dealership, that Nissan backed the car with an express warranty, and that Nissan's authorized dealerships [were] its agents for purposes of the sale of Nissan vehicles to consumers." *Id.* at 844.

Here, plaintiffs allege that they "entered into a warranty contract with Defendant FCA regarding a 2019 Jeep Cherokee." Plaintiffs allege that FCA knew about the defect in their Jeep's transmission and "nevertheless concealed and failed to disclose the defective nature of the Vehicle and its Transmission Defect to its sales representatives and Plaintiffs at the time of sale and thereafter." Plaintiffs add that they "interacted with sales representatives, considered Defendant FCA's advertisements, and/or other marketing materials concerning the Defendant FCA Vehicles prior to purchasing the[ir] Subject Vehicle." If plaintiffs knew about the defect, they would not have bought their Jeep. *Id.* Further, FCA does not dispute that its dealers often are major conduits through which information about vehicles flows to consumers. FCA presumably gives information to dealerships who in turn pass that information on to consumers, especially if it is material to their decision to buy a vehicle.

Imposing a duty of disclosure under these circumstances serves the underlying purposes of the fraudulent concealment tort. If someone wants information about a particular FCA vehicle they are considering purchasing, the dealership from which they may buy that vehicle is often the most obvious source of information. The dealership, however, is dependent on FCA's disclosure of material information to dealerships. Assuming FCA knew of a defect in plaintiffs' transmission

---

[3] On questions of state law, the decisions of the California Courts of Appeal are persuasive precedent in the absence of evidence that the California Supreme Court would not adopt that position. *See Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1069 (9th Cir. 2020).

and those facts were "known or accessible only to" FCA, the only way FCA could reasonably reach consumers would be through a disclosure by FCA either directly to consumers or to its dealers. *Rattagan*, 17 Cal. 5th at 40. The purpose of California's fraud cause of action is to encourage the disclosure of such truthful information to consumers. *See id.* (explaining that fraudulent concealment deters misrepresentations "in the future while encouraging 'a business climate free of fraud and deceptive practices'") (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991–92 (2004)); *see also Lazar v. Super. Ct.*, 12 Cal. 4th 631, 646 (1996) ("In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future.").

Plaintiffs' pleadings here sufficiently allege that FCA interacted with plaintiffs through an agent in a manner plausibly creating a duty to disclose. Whether such a duty actually existed depends on the circumstances of the interaction. *See Rattagan*, 17 Cal. 5th at 40 (listing five sufficient conditions to create a duty to disclose). California courts have recognized such a duty where the defendant had "exclusive knowledge," meaning "the material facts [were] known or accessible only to defendant, and defendant kn[ew] those facts [were] not known or reasonably discoverable by plaintiff." *Id.* Plaintiffs adequately allege that FCA had "exclusive knowledge." *Id.* Plaintiffs allege that FCA "acquired its knowledge of the Transmission Defect prior to Plaintiffs acquiring the[ir] Vehicle, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data; early consumer complaints about the Transmission Defect …; aggregate warranty data…; testing conducted by Defendant FCA in response to these complaints; as well as warranty repair and part replacements data …."

FCA's remaining argument is that "[d]ata collection and warranty provision do not establish duty of disclosure." But FCA's argument is a non sequitur because plaintiffs adequately allege a duty to disclose based on FCA's exclusive knowledge. Plaintiffs do not need to plead that FCA collected enough data and offered its warranty as to establish a duty to disclose. As noted above, plaintiffs have alleged that FCA was aware of the problems with its transmission at the time of plaintiffs' purchase. Plaintiffs have also alleged that they were not aware of those

9

United States District Court
Northern District of California

problems and would not have bought their Jeep if they were. Plaintiffs have thus pleaded that FCA had knowledge regarding their Jeep Cherokee that was "known or accessible only to" FCA, *Rattagan*, 17 Cal. 5th at 40, and that they did not know about and could not reasonably discover the transmission defects. These pleadings suffice to allege a duty of disclosure.

### C. Economic Loss Doctrine

The economic loss rule prevents a plaintiff from recovering negligently "inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Rattagan*, 17 Cal. 5th at 20 (quoting *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022)). If there are only "economic losses" stemming from a contractual breach, then a plaintiff may generally recover only contract, not tort, remedies. *Id.* at 20–22. A plaintiff alleging fraudulent *inducement*, however, can still sue "where the contract was fraudulently induced." *Robinson Helicopter*, 34 Cal. 4th at 989–90; *see also Lazar*, 12 Cal. 4th at 646 ("More fundamentally, it is a truism that contract remedies alone do not address the full range of policy objectives underlying the action for fraudulent inducement of contract."); *Dhital*, 84 Cal. App. 5th at 838–39. Here, plaintiffs allege that FCA "committed fraud" by inducing them to buy their Jeep "without disclosing that the [Jeep] and its transmission were defective …." Complaint ¶¶ 70, 71, 72. The economic loss rule does not apply because plaintiffs' claims stem from FCA's allegedly fraudulent omission, not the contract with FCA *resulting* from that omission.

FCA argues that the California Supreme Court's decision in *Rattagan v. Uber Technologies* requires FCA to have allegedly "violate[d] an independent duty and cause[d] noneconomic harm." *Rattagan* says, "Under California law, a plaintiff may assert a cause of action for fraudulent concealment based on conduct *occurring in the course of a contractual relationship*, if the elements of the claim can be established independently of the parties' contractual rights and obligations and the tortious conduct exposes the plaintiff to a risk of harm beyond the reasonable contemplation of the parties when they entered into the contract." 17 Cal. 5th at 45 (emphasis added). Under its own terms, the California Supreme Court's decision dealt with how to determine whether a plaintiff can sue a defendant for tortious conduct when the plaintiff *already* has a contract with the defendant. "With this framework in mind, it is not

United States District Court
Northern District of California

surprising that most fraudulent concealment allegations stem from precontractual negotiations … and are ultimately presented as causes of action for fraudulent inducement or promissory fraud." *Id.* at 41 ("The same may not necessarily be true of fraudulent concealment claims based on conduct occurring *after* the contract has been formed." (emphasis added)). Here, plaintiffs bring claims for FCA's fraudulent *inducement* of their purchase and warranty. As *Rattagan* recognized, this is the classic circumstance in which the economic loss rule does not apply.

**CONCLUSION**

For the above reasons, FCA's motion for judgment on the pleadings is denied.

**IT IS SO ORDERED.**

Dated: March 16, 2026

P. Casey Pitts
United States District Judge

11